THE H. A. BAXTER et al.

(District Court, D. Rhode Island. November 25, 1908. On Points Reserved, January 6, 1909.)

Nos. 1,127, 1,128, 1,129.

1. COLLISION (§ 95*)—STEAMER AND TOW MEETING—VIOLATION OF RULES.

A collision at night in Providence river, Rhode Island, between a barge in tow of the tug Baxter passing up the river, and the meeting steamship Powhatan, held due primarily to the fault of the Baxter in keeping to the westward or port side of the channel in violation of article 25 of the inland rules (30 Stat. 101 [U. S. Comp. St. 1901, p. 2883]), even after the agreement between the vessels to pass port and port, but the Powhatan also held in fault for not sooner stopping and reversing when the danger of collision became apparent.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 200–202; Dec. Dig. § 95.*

With or between towing vessels and vessels in tow, see note to The John Englis, 100 C. C. A. 581.]

2. INSURANCE (§ 606*)—SUBROGATION UNDER MARINE POLICY.

A towing company under an open policy of marine insurance took out a certificate on the cargo of a barge which it had in tow, payable to the cargo owner, and paid the premium thereon. The cargo was lost in a collision, and the insurer paid the loss. Held, that the towing company, and not the cargo owner, was the assured, and that a provision of the policy and certificate that, on the payment of any loss, the insurer should be subrogated to all the rights of the assured, did not authorize a recovery for its benefit from the towing company on the ground that it was in fault for the collision.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1504–1516; Dec. Dig. § 606.*]

In Admiralty. Suits by the Merchants' & Miners' Transportation Company, owner of the steamship Powhatan, against the tug H. A.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Baxter and barges Ira A. Allen and Elheurah, and cross-libel by the Robinson, Baxter & Dissoway Towing & Transportation Company, by the General Chemical Company against the Baxter and the Powhatan, and by Louis Gildersleeve and Moses B. Brodhead against the Baxter and Powhatan. Decree in the first suit against the Baxter and Powhatan, in the second suit for respondents, and in the third suit for libelants.

Daniel H. Hayne and Frank Healy, for Merchants' & Miners' Transp. Co.

Carpenter & Park, for the H. A. Baxter and the Ira A. Allen.

J. J. Macklin, for General Chemical Co., Louis Gildersleeve, and The Elheurah.

BROWN, District Judge. These libels relate to a collision between the steamship Powhatan, of the Merchants' & Miners' Transportation Company, and the barge Ira A. Allen, in tow of the steam tug H. A. Baxter, in the Providence river, about 1:38 a. m., November 12, 1905.

The barge Allen and the following scow Elheurah, which ran into the stern of the Allen, were both sunk very near the place of collision. The collision occurred within a few feet of the sunken wreck of the Allen, and close to the westerly bank of the dredged channel.

The stem of the Powhatan struck the barge Allen about 15 or 20 feet from the stem of the barge on the port side. The collision was of sufficient force to break the port anchor of the barge and to cut into her to within one deck beam of the middle hatch from 40 to 50 feet from the point of impact. The Elheurah's bow was crushed by running into the stern of the Allen. Both barge and scow sank immediately.

The location of the wreck of the Allen is definite. It bore from Pomham Light N. W. ½ W. from Pomham Beacon N. E. ½ N. from Fuller's Rock Light N. ¾ W. It was distant from Pomham Light about 1,000 feet, and was between 700 and 800 feet up the channel from a point abreast of Pomham Light.

The steam tug H. A. Baxter is about 83 feet long, 87 gross tons. Her draught is given by her master as 12 feet. She was on a voyage from New York to Providence, having in tow first, on a hawser about 300 feet long, the barge Ira A. Allen, with a cargo of chemicals, casks in her hold and carboys on deck; second, the Elheurah, a new scow without a rudder, on a much shorter hawser of disputed length. The tide was young flood, and assisted the tow about a mile an hour. The tug was proceeding at full speed, and the progress over the ground was probably about five miles an hour at the time of collision.

The Powhatan is an iron screw steamship of 2,898 gross tons, 320 feet long, 40 broad, her draught 15.10 feet. She was on a voyage to Norfolk. It was a bright moonlight night, and objects were visible for a long distance.

The Powhatan was going at slow speed under one bell, probably about six or seven miles an hour. After passing Fuller's Rock, and just before reaching the buoy No. 11, she sighted the Baxter and her tow, which were well below Pomham Light. She blew one whistle, which was immediately answered by one whistle from the Baxter.

At the exchange of signals the vessels were nearly a mile apart. The Powhatan directed her course to the right of the channel without reducing her speed until near buoy No. 9, when her engines were stopped. She was then less than a quarter of a mile from the place of collision, and at this time it must have been evident to the officers of the Powhatan that the tug and her tow were well over to the westerly side of the channel and that for the Powhatan to continue her usual course to the right of the channel would involve risk of collision.

The fault of the Baxter in proceeding with her tow toward Providence up the narrow and crooked channel, well over on the westerly side of the channel, is clearly established by the location of the wreck, which was somewhat eastward of the place of collision. It is clear that she took that side of the channel which lay on her port hand, instead of that side which lay on her starboard hand in direct violation of the following provision of the inland rules:

"Sec. 25. In narrow channels every steam vessel shall, when it is safe and practicable, keep to that side of the fair way or midchannel which lies on the starboard side of such vessel." 30 Stat. 101 (U. S. Comp. St. 1901, p. 2883).

Off Pomham the channel is 700 or 800 feet wide and navigable close up to Pomham Rocks, yet the tow was so near the extreme western edge of the dredged channel as to put the Powhatan in peril of grounding had she attempted to go much farther to the west.

It is also charged that the Baxter was at fault for a failure to comply seasonably with the passing signals exchanged.

Both sides agree in locating the steamer at or above buoy No. 11 at the exchange of signals, but the location of the Baxter is not so definite. Green, master of the Baxter, states that at the exchange of signals the tug was above Pomham some 400 or 500 feet. According to this, the tug was then only 200 or 300 feet from the place of collision and the Allen, on a hawser of 300 feet, about 587 to 687 feet. At a speed of five knots, the Allen would have reached the collision point in about a minute and a half from the exchange of signals. Thorsen, the mate of the Baxter, who was at the wheel, estimates the time between the exchange of signals and the collision as from 7 to 10 minutes. He also states that the tug had passed Pomham Light when he first heard the signal from the Powhatan. Both the master and mate of the Baxter agree that they did not change the wheel to go to starboard until past Pomham Light, and that then they went to starboard one point. That the Baxter made no attempt to go to the easterly side of the channel until she was well past Pomham may be taken as an established fact.

The testimony from the Baxter that signals were not exchanged until after the Baxter was to the north of Pomham is directly contradicted by the testimony of Ryan, master of the Powhatan, who locates the tug between buoy No. 7 in the Great Bend and Pomham, by Borum, the second officer, and by all the probabilities.

I find that the Baxter after the exchange of passing signals continued to hold a course on the westerly side of the channel, and was guilty of a failure to comply seasonably with signals exchanged.

The Baxter is also charged with fault, in that she was improperly

officered and manned. Thorsen, the mate, was at the wheel. He testi-fies that he came on duty at midnight, and that the master was sitting beside him on a chair, and had charge of the navigation. Thorsen says that he was not very familiar with the locality. Green, the mas-ter, testifies that he did not give orders to the mate until after they met the steamer and exchanged signals. Upon the whole testimony, it is apparent that the navigation of the tug was practically in the hands of Thorsen until very shortly before the collision, and that through his ignorance of the channel he kept well over to the westerly side. So far as appears, the only person attempting to perform the duties of a lookout was Thorsen himself. The navigation of the tug was entirely without that diligence and knowledge which was neces-sary in that part of the river.

The master of the barge Allen was asleep in the wheelhouse, and a deck hand was at the wheel. He was ignorant of the channel and fol-lowed the wake of the tug. No other men were aboard, and no change of wheel was made in an immediate attempt to avoid the col-lision or lessen the force of the blow.

The scow Elheurah had no steering apparatus and was helpless.

The faults of the tug and tow are so clearly shown by the location of the wreck, however, that a further consideration of this aspect of the case is unnecessary.

I agree with the contention of counsel for the Powhatan that the fundamental fault of the tug and tow's navigation was in disobedience of article 25, and the continued adherence to the wrong side of the channel.

The question of the Powhatan's fault is more difficult. When she stopped her engines just before reaching buoy No. 9, it must have been evident that the tow was so far to the westerly side of the chan-nel that it would require considerable time for the tug to pull her tow over to the easterly side. Capt. Ryan of the Powhatan says that, when he got down to buoy No. 9, he hauled to S. ½ E., and that his vessel headed that way up to the time of collision. He states that she ran on for about a minute, that she then reversed slowly for about a minute and then backed full speed from 2 to 2½ minutes, and that then the Allen "impaled herself" upon the stem of the Powhatan, that he still continued to back possibly a minute and released his ship of the obstruction and then stopped. He testifies that his vessel was under sternway moving up the river at the moment of collision.

Just before the collision, the Baxter passed the Powhatan from 50 to 75 feet to the eastward, and Green, master of the Baxter, testi-fied that he then saw from the water at the Powhatan's stern that she was backing. The evidence as to the speed of the Powhatan at the moment of collision is very conflicting. Ryan says that his vessel had sternway and was moving up the river; Thorsen that the Powhatan passed the Baxter at a speed of about seven miles. Upon a consid-eration of the entire evidence, I am of the opinion that the Powhatan's speed had been very considerably reduced at the moment of collision, and that the question of her fault depends upon whether she did not delay too long in reversing. The evidence preponderates to the effect that the engines were stopped near buoy No. 9, some 1,200 or 1,300

feet from the place of collision, and that she ran on under her headway at least 600 or 700 feet before reversing, and that she then began to back slowly. She was then not more than 500 or 600 feet from the place of collision with the Allen, and not much more than half her ship's length from the Baxter. The Baxter was then on her port bow, and the Allen was nearly ahead, and not following the tug, but still swinging, possibly diverted to port by the quick water from the easterly movement of the tug. The situation was then critical, and called for immediate reversal full speed astern.

It was reasonable to expect that the Baxter would do much more than she did to get to her proper side of the channel, and it is quite probable that the master of the Powhatan did not anticipate such obstinate insistence on the wrong course as that of which the Baxer had been guilty; but, according to Ryan's own statement, he continued backing at slow speed for a full minute before giving the order full speed astern.

The very deep cut in the Allen and the very great force of the collision seem inconsistent with the testimony that the Powhatan had acquired sternway, and consistent with the view that she was still under considerable headway at the moment of collision. The preponderance of the whole case is against the Powhatan on this point.

It is possible that the extent of the damage was due in part to the impact of the barge Elheurah upon the stern of the Allen while she was still in contact with the Powhatan, but Capt. Ryan is very positive in his testimony that the Powhatan had entirely disengaged herself from the Allen before the Elheurah struck the stern of the Allen. This seems highly improbable, however.

The Powhatan is also charged with fault in not having gone further to the west and still closer to the western bank of the channel. Several of the tow boat captains, however, of long experience on the Providence river, testify that she had gone as far to the westward as was safe. I think that she cannot be held at fault for failure to go farther to the west. Had she done so, it is very doubtful if she would have avoided the Elheurah, which was still slewing in the wake of the Allen, without a rudder, a mere unmanageable box which could do nothing for her own safety but was entirely dependent upon the movements of the tug and of the Allen, which could not keep her under a close control.

The master of the Powhatan chose to stop rather than to proceed farther to the westward. The tug, by her violation of the rules having imposed upon him the alternative of stopping or going further to the west with danger of grounding, can hardly complain of his choice to slacken speed and give the tug time to get her barges out of the way. It was probably good judgment to stop rather than to proceed, and the only question of fault which I think is of consequence in relation to the Powhatan is whether she did not unreasonably delay in reversing. That it was quite possible for the Powhatan to have stopped entirely and to have acquired sternway before the collision is apparent from her contention that she did in fact do so. As I find from all the testimony that she was still under considerable headway, it fol-

lows that she did not do what it is claimed on her behalf to have been the proper course.

I am therefore of the opinion that both the Powhatan and Baxter were at fault in the particulars above referred to.

### The Libel of The General Chemical Company.

The General Chemical Company, owner of the cargo of the Ira A. Allen, has received payment for its loss from the Fireman's Fund Insurance Company. The answer of the owners of the H. A. Baxter sets up this payment in bar of any further right of recovery. The chemical company claims that it was the insured party, and that its right of recovery is not affected by its receipt of payment from its insurer.

The owners of the H. A. Baxter contend that they were the insured party, and that payment by the insurance company to the chemical company was on behalf of the owners of the Baxter as the insured party.

The question is, Who was the insured party?

A policy of insurance was issued to the Robinson, Baxter & Dissoway Towing & Transportation Company for account of whom it might concern, "loss if any payable to them or order, on all lawful goods, etc., while on board barges owned by them or other vessels that may be approved by that company, against any and all risks and perils of fire, and inland navigation and transportation, property of the assured or held by them, in trust or custody as a freighter, forwarder, bailee or common carrier," etc. "All entries to be made in pass book prior to any loss to the vessel or cargo."

A pass book was kept, and this shipment was duly entered and approved by the agent of the insurance company. The premium on the above policy was paid by the Robinson, Baxter & Dissoway Towing & Transportation Company, owners of the H. A. Baxter. Upon the application of the agent a certificate was issued in the following form:

"Fireman's Fund and Insurance Company
"of San Francisco.

"Atlantic Marine Department.
"No. 128675.          "F. Herrman, Manager.          $16,555.
"November 9th, 1905.

"This is to certify that on Nov. 9, 1905, this company insured under policy No. 606 for Robinson, Baxter & Dissoway T. & T. Co. the sum of sixteen thousand, five hundred and fifty-five dollars on Glauber salts, etc., valued at ———, shipped on board of the barge Ira A. Allen at and from New York to Providence; loss if any, payable only to the order of General Chemical Company on surrender of this certificate, and said loss to be adjusted with the holder hereof in conformity with the conditions of the said policy, and paid at the office of the company in New York.

"This certificate represents and takes the place of the policy and conveys all the rights of the original policy holder (for the purpose of collecting any loss or claims), as fully as if the property was covered by a special policy to the holder of this certificate, and free from any liability for unpaid premium.

"It is hereby understood and agreed that in case of claim for loss or damage happening to the interest insured under this certificate, the same shall be reported as soon as known either to F. Herrman, Manager, New York or the agent of the company, if there be one, at the place where the loss may occur.

"It is agreed that upon the payment of any loss or damage, the insurers are to be subrogated to all the rights of the assured under their bills of lading or transportation receipts to the extent of such payments.

"It is understood and agreed that in case any agreement be made by the assured with any carrier by which such carrier stipulates to have, in case of any loss, for which he may be liable, the benefit of this insurance, then and in that event, the insurer shall be discharged of any liability for such loss hereunder."

It seems quite clear under the terms of both the policy and certificate that the General Chemical Company was not the assured, but merely the payee in case of loss. The agreement is with the Robinson, Baxter & Dissoway Company, who is the "assured," and the insurers are to be subrogated to the rights of the assured, and not to the rights of the payee. Wager v. Providence Insurance Company, 150 U. S. 99, 14 Sup. Ct. 55, 37 L. Ed. 1013.

The fact that the amount of the premium paid by the towing company was added to the transportation charges in the bill rendered to the chemical company is entirely insufficient to show that the towing company was acting merely as agent for the chemical company in effecting insurance. The policy and certificate show the true relation of the parties.

While I have reached the conclusion that the joint negligence of the tug H. A. Baxter and of the Powhatan contributed to the injuries of both the Ira A. Allen and the Elheurah, I find myself unable upon the briefs presented, and without further assistance from counsel to determine whether the independent faults charged to both the Allen and the Elheurah contributed to the injuries which they respectively suffered. Whether they were capable of independent action under the circumstances, and whether the Elheurah is chargeable for any faults due to the absence of steering gear, are questions that seem to require further consideration.

Counsel may within 20 days file additional briefs on these points.

## On Points Reserved in Opinion of November 25, 1908.

Upon a consideration of the supplemental briefs relating to the question whether independent faults, charged to the barge Allen and the scow Elheurah, contributed to the injuries suffered by them, and upon further consideration of the testimony, I have reached the conclusion that the tug H. A. Baxter had persisted so long in her improper course and the Powhatan had so long delayed checking her progress toward the tow that no change of wheel on the part of the Allen and no independent action by either the Allen or the Elheurah would have averted the collision or reduced its force.

I find, therefore, that the damages resulting from this collision were due solely to the faults and to the joint negligence of the H. A. Baxter and the Powhatan.

A decree may be presented accordingly.